## Kucharcov's Estate.

*R. J. Lucksha,* for exceptant.

*Arthur O. Fording* and *Herbert H. Hawkins,* contra.

TRIMBLE, P. J., January 29, 1931.—Achvanas Kucharcov, whose domicile at the time of his death was in Russia, died testate on July 19, 1920, while he was residing in Renton, Allegheny County, Pennsylvania. He had been a resident of the United States for about twenty years preceding his death. Letters of administration *c. t. a.* were granted to the Potter Title and Trust Company on September 8, 1920, and on March 3, 1930, an account was filed. At the audit, the balance for distribution was $2072.75, according to the supplemental audit statement filed. The last will and testament of decedent directs payment of $400 to Lawrenti Cuhakov for funeral expenses and the sum of $800 to testator's mother. There is an intestacy as to the balance of his estate.

According to the testimony produced in the audit statement and by investigation of a master and at the last audit, it appears that testator's widow resides at Chertovichi Village, Russia, and has remarried; that his, mother, Natalia Propakievna Kucharcov, survived him and died in March, 1930; that there is one brother, Emelian Kucharcov, and two sisters, Galina Kochelova and Euphemia Bikonin, both living in the village of Rozni, Russia, surviving. There were no children born to the marriage and the widow takes her share as in intestacy. In cases of this kind, section 2 (a) of the Intestate Act of 1917, P. L. 429, provides that where there is intestacy, entire or partial, the widow shall first have $5000 from the residue at the time of distribution. The share here is less than that amount and she is entitled to the whole of it.

The widow in Russia executed a power of attorney to Dr. David H. Dubrowsky, representative of the Russian Red Cross Society with offices in America, "to recover and receive . . . sums of money . . . due or hereafter to become due or belonging to me by reason of the death of Afanasy I. Kuchartzeff, as my distributive share of the estate of the said Afanasy I. Kuchartzeff or otherwise from the executor or administrator of the estate . . . with full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done . . . as I might or could do if personally present." The execution of the power of attorney was by the widow at her personal request, and the signature is certified by the chairman and secretary of the village council duly sealed. The signature of the chairman and secretary of the village council are certified by the acting chairman and secretary of the county executive committee duly sealed. The signatures of the acting chairman and secretary of the county executive committee are certified by the district Executive Committee of the County of Klintzy and the signatures of the latter committee are certified by the acting secretary of the District Executive Committee of the Briansk Government and sealed. There is a further certificate as to the authenticity of the signature of the acting secretary of the District Executive Committee of the Briansk Government signed by the manager and by the counselor of the Peoples' Commissariat of Foreign Affairs and sealed with its seal, and, finally, the signatures of the acting chief of the office of the Peoples' Commissariat of Foreign Affairs and of said counselor are both certified to have been "seen" at the German embassy at Moscow and this visa is sealed by said German embassy.

The United States has discontinued all rights and privileges of citizens of Russia granted to them by any former treaty or convention and the two nations do not now have reciprocal diplomatic or consular representation. The further result of this is that the comity which ordinarily exists between friendly nations is suspended.

At the audit of this estate, the court has had the assistance of an *amicus curiæ* acting by special leave of the court. He has pointed out the law of Pennsylvania with respect to the necessity of the execution of legal documents of nationals of Russia before consuls, citing the Acts of January 12, 1705, 1 Sm. Laws 69, section 2; January 16, 1827, 9 Sm. Laws 255, section 1; December 14, 1854, P. L. (1855) 724, section 1; April 27, 1876, P. L. 49, and April 2, 1859, P. L. 352, section 1.

After audit, distribution was made as follows: to the estate of Natalia Propakievna Kucharcov, mother and legatee, legacy and interest, $1008.52, and to Dr. David Dubrowsky, representative of the Russian Red Cross Society, attorney in fact for Anisia Nikitovna Kochmarova, widow, $1064.23. The widow only may be the distributee of the portion passing under the intestate laws. Exceptions were filed and the important questions arising therefrom are: May there be any distribution to Russian nationals when diplomatic relations with Russia are discontinued? Was the power of attorney, as executed by the next of kin and witnessed by officers of the Union of Socialistic Soviet Republics, admissible in evidence?

In coming to a conclusion in this case, we will not be concerned with the severance of diplomatic relationship and such questions as may be involved therein. These are political problems. This is a judicial question concerning the rights of individuals domiciled in Russia arising under the laws for the distribution of estates in Pennsylvania. We are, therefore, restricted to a determination of the private rights of Russian nationals. That this position is well settled it is only necessary to cite the article entitled "Acts of Unrecognized Governments—Effect Given to Decrees of the Russian Soviet Govern-

ment in American Courts" in 30 Columbia Law Review 226, where the subject is ably noted. On page 231, Texas *v.* White, 7 Wall 700, 733, is cited. There Chief Justice Waite said: "It may be said, perhaps with sufficient accuracy, that acts necessary to peace and good order among citizens, such for example, as acts sanctioning and protecting marriage and the domestic relations, governing the course of descents, regulating the conveyance and transfer of property, real and personal, and providing remedies for injuries to person and estate, and other similar acts, which would be valid if emanating from a lawful government, must be regarded in general as valid when proceeding from an actual, though unlawful, government." See, also, Werenjchik *v.* Ulen Contracting Corp., 229 App. Div. 36, 240 N. Y. Supp. 619, affirmed 255 N. Y. 56, 173 N. E. 921. The succession right to property is the only question in this proceeding. Russian nationals have a right to property now in the hands of an administrator duly appointed under the law of Pennsylvania, and, beyond any doubt, they are entitled to have that property delivered to them. If this were not so, then we have the crude and uncivilized result which comes from accepting the Russian immigrants and confiscating their property earned and owned by them because their kin happen to be a part of a government which is not now recognized diplomatically. This would be gross injustice and will not be permitted by American courts.

We pass from this question, then, to determine whether the widow who lives in Russia executed a valid power of attorney and whether effect should be given to it. There seems to be no doubt at all that this illiterate widow signed the paper that is offered in evidence by a cross, and there is no denial that the officers of the Soviet régime witnessed the execution, but it is argued that, because the execution was not attested by an American consul, it is not admissible in evidence, and, in support of this contention, the acts of assembly above cited are offered as a bar to distribution to the attorney in fact. The acts of assembly cited by the *amicus curiæ* afford one method of making a power of attorney admissible, but they do not declare that this method is exclusive. It is not. If we had the testimony of witnesses who appeared in court showing that the persons having these interests had executed the power of attorney by signature or mark, of course the instrument would be admitted. What shall we say, then, of the actual execution of this power when witnessed by the officers of the Union of Socialistic Soviet Republics and the German consul? Russia has a government of some sort, that is sure, and these men are officers of that government, but, in witnessing the power, they were not exercising any governmental function which could be at variance with any dispute between that government and the United States. Their acts are in aid of their nationals, performed, perhaps, ex officio in recovering individual rights and not in aid of any political function of the government under which they live, and, since no political function is involved, the source of their authority is irrelevant.

Counsel for the attorney in fact answers the argument made from the citation of the enabling statutes when notaries appear before American consuls and certify to signatures and acts by citing another act: 1705, 1 Sm. Laws 69, section 2, 28 PS § 97. This covers the instant case by declaring that letters of attorney proved by two or more witnesses "before any mayor, or chief magistrate, or officer of the cities, towns or places where such . . . letters of attorney . . . are or shall be made or executed, and . . . certified under the common or public seal of the cities, towns or places, where the said . . . letters of attorney . . . are so proved respectively, shall be taken and adjudged as sufficient in law, as if the witnesses therein named had been present, and such certification shall be sufficient evidence to the court and jury

for the proof thereof." The title of this section refers to instruments or writings made out of this province and the power of attorney, witnessed by persons described as officers of a town, was admissible thereunder.

Counsel for the attorney in fact properly disposes of exceptions by the *amicus curiæ*, which would bar the attorney's right to recover because he is not the attorney individually but represents the Russian Red Cross Society, by asserting that the exercise of the power must be by the individual and not by the society.

It is also argued that it is improvident for these Russian nationals to receive their money through the agency of the power of attorney. There is testimony which would tend to show that a greater benefit would be derived by the distributee if the amount to which she is entitled were paid in American money. We will not enter into this question because she had a right to choose her own method of transmission. She has nominated her attorney and we will not be concerned whether she will get a greater or a less amount of Russian rubles in exchange for the American money distributed to the attorney. The testimony is sufficient to show that the intention of the attorney in fact is to deposit the money to the credit of the distributee in a Russian bank to be paid to her in Russian currency.

The exceptions to the decree will be dismissed.

From William J. Aiken, Pittsburgh, Pa.